## No. 746
## VALLERY v. BEARD, Exr. et
### No. 19283. Supreme Court

On motion to certify. Dock. July 22, 1925; 3 Abs. 466.

**147. BILLS AND NOTES**—Where several notes of a series have been transferred to a wife by reason of an ante-nuptial contract, said series being secured by mortgage; in case of insolvency of makers how are the proceeds of the property to be distributed when said proceeds are deemed insufficient to pay off the holders of the notes in full?

On April 15, 1919, Andrew Vallery conveyed his farm to Boyd and Gail Skinner for $50,000 of which $15,000 was paid in cash, and seven notes of $5,000 each for the remaining $35,000 were executed bearing 6% interest and due, one in one year, one in two years and five in three years from date, said notes being secured by a mortgage.

Andrew Vallery married Kate Tootle Vallery on Jan. 6, 1920, following a courtship during which negotiations for an ante nuptial contract resulted in an agreement that he should pay her $15,000 in cash in settlement of her anticipated rights as his wife. Subsequently he insisted that she accept three of the notes in lieu of the agreed cash consideration. She declined but thereafter accepted upon his representations that the notes were better than government bonds and upon the advice of a notary public who substantiated Vallery in his argument that the farm would be worth at least $15,000 so that she would be sure of her share. After signing the contract the parties were married.

The annual interest was paid by Skinner and of the $900 due on her notes Mrs. Vallery received $245, the interest earned from the date of entering into the ante-nuptial agreement. Payments were made by Skinner in 1922 and 1923, none being made thereafter. The farm is now worth much less than the mortgage debt.

In July 1923, Andrew Vallery died intestate, William Beard being the duly qualified executor of his will; and as such Beard filed his action for personal judgment in the Ross Common Pleas for the four notes belonging to his testator's estate and for foreclosure of the mortgage alleging that the "real estate is probably insufficient to discharge the mortgage" and that "said four notes are the first and best lien upon said real estate, superior to all other claims." The Common Pleas decreed that the obligations due Mr. and Mrs. Vallery were of equal priority. On appeal the Court of Appeals affirmed the decision of the Common Pleas remanding the cause to the lower court with orders that Skinner pay to Beard $24,427.44 and to Mrs. Vallery $19,181.85 within three days or the equity of redemption would be foreclosed and premises sold. Mrs. Vallery filed a motion for a new trial which was overruled and the case was filed in the Supreme Court where it is now pending.

The question presented is whether there is error in the decree of the Court of Appeals requiring a pro rata distribution of the anticipated insufficient proceeds to pay the entire indebtedness and if there be such error, then how shall such insufficient proceeds be applied?

It is contended that three rules have been announced and followed by courts, namely, 1. the prorata rule (followed by the lower courts in this case). 2. the earlier maturity rule (contended for by Beard). 3. the prior assignment rule which is contended by Mrs. Vallery to be applicable to the facts in the instant case.

It is claimed that the facts in this case are legally equivalent to those considered in Anderson v. Sharp, 44 OS. 260, in which it was held that A, (Mrs. Vallery in this case) was entitled to payment in full from proceeds before application of the money to the claim of S, (Beard in the instant case).

"Where a holder of a mortgage assigns a part of it, although he warrants only the existence of the debt at the time of the transfer it would be contrary to good faith to permit him, after receiving the money for this part of the claim, to come into competition with his assignee if the property prove insufficient to pay the claims of both".

"The transfer of a mortgage, or a note secured by it is subject to the convention of the parties; they may stipulate that the mortgage shall inure as a security for the note or notes retained by the assignor but in absence of any agreement the presumption is that the assignee is to be paid first from the avails of the mortgaged property."

The assignment of a note secured by mortgage operates to transfer it without any special agreement therefor or any endorsement thereon evidencing such transfer. Kernohan v. Manns, 53 OS. 118. In the instant case it is contended that the joint ownership of the security results both from the separate ownership of the respective notes secured thereby and from indorsement on the mortgage which merely evidences that which was accomplished by the assignment of the notes and adds nothing to the legal effect resulting from such assignment.

It is contended that the conduct of the parties in distributing the interest is utterly inconsistent with the suggestion of the Court of Appeals that; "at the time of the execution of the ante nuptial contract, it was understood that Mrs. Tootle was to receive three-sevenths of the mortgage security and Vallery four-sevenths and that this division of ownership was to be recognized by each."

**Attorneys**—Wilby G. Hyde for Vallery; John P. Phillips, Sr., for Beard, Exr.; both of Chillicothe.